UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

```
--------------------------------------------------------X
Matthew Titus,                                          :
                                                        :
                          Plaintiff,                    :
                                                        :        Case No.: 1:21-cv-00616
              -against-                                  :
                                                        :
Tire Discounters, Inc.                                  :
                                                        :
                          Defendant.                    :
--------------------------------------------------------X
Ronald Litton,                                          :
                                                        :
                          Plaintiff,                    :
                                                        :        Case No.: 1:21-cv-00617
              -against-                                  :
                                                        :
Tire Discounters, Inc.                                  :
                                                        :
                          Defendant.                    :
--------------------------------------------------------X
Amanda Patrick,                                         :
                                                        :
                          Plaintiff,                    :
                                                        :        Case No.: 1:21-cv-00618
              -against-                                  :
                                                        :
Tire Discounters, Inc.                                  :
                                                        :
                          Defendant.                    :
--------------------------------------------------------X
Franklin Key,                                           :
                                                        :
                          Plaintiff,                    :
                                                        :        Case No.: 1:21-cv-00619
              -against-                                  :
                                                        :
Tire Discounters, Inc.                                  :
                                                        :
                          Defendant.                    :
--------------------------------------------------------X
James Knipp,                                            :
                                                        :
                          Plaintiff,                    :
                                                        :        Case No.: 1:21-cv-00620
              -against-                                  :
                                                        :
Tire Discounters, Inc.                                  :
```

```
                                                    :
                     Defendant.                     :
----------------------------------------------------X
                                                    :
Don Speakes,                                        :
                                                    :
                     Plaintiff,                     :
                                                    :      Case No.: 1:21-cv-00621
          -against-                                 :
                                                    :
Tire Discounters, Inc.                              :
                                                    :
                     Defendant.                     :
----------------------------------------------------X
                                                    :
Wesley Lowe,                                        :
                                                    :
                     Plaintiff,                     :
                                                    :      Case No.: 1:21-cv-00627
          -against-                                 :
                                                    :
Tire Discounters, Inc.                              :
                                                    :
                     Defendant.                     :
----------------------------------------------------X
                                                    :
Stephen Moffett,                                    :
                                                    :
                     Plaintiff,                     :
                                                    :      Case No.: 1:21-cv-00628
          -against-                                 :
                                                    :
Tire Discounters, Inc.                              :
                                                    :
                     Defendant.                     :
----------------------------------------------------X
                                                    :
William Patrick,                                    :
                                                    :
                     Plaintiff,                     :
                                                    :      Case No.: 1:21-cv-00629
          -against-                                 :
                                                    :
Tire Discounters, Inc.                              :
                                                    :
                     Defendant.                     :
----------------------------------------------------X
                                                    :
Joseph Siefert,                                     :
                                                    :
                     Plaintiff,                     :
                                                    :      Case No.: 1:21-cv-00630
          -against-                                 :
                                                    :
Tire Discounters, Inc.                              :
```

|  | : |  |
| --- | --- | --- |
| Defendant. | : | |
| ----------------------------------------------------X | | |
| *William Arnold,* | : | |
| | : | |
| Plaintiff, | : | |
| | : | Case No.: 1:21-cv-00631 |
| -against- | : | |
| | : | |
| Tire Discounters, Inc. | : | |
| | : | |
| Defendant. | : | |
| ----------------------------------------------------X | | |
| *William Stafford,* | : | |
| | : | |
| Plaintiff, | : | |
| | : | Case No.: 1:21-cv-00632 |
| -against- | : | |
| | : | |
| Tire Discounters, Inc. | : | |
| | : | |
| Defendant. | : | |
| ----------------------------------------------------X | | |
| *Dallas Scott,* | : | |
| | : | |
| Plaintiff, | : | |
| | : | Case No.: 1:21-cv-00633 |
| -against- | : | |
| | : | |
| Tire Discounters, Inc. | : | |
| | : | |
| Defendant. | : | |
| ----------------------------------------------------X | | |
| *Adam Duermit,* | : | |
| | : | |
| Plaintiff, | : | |
| | : | Case No.: 1:21-cv-00634 |
| -against- | : | |
| | : | |
| Tire Discounters, Inc. | : | |
| | : | |
| Defendant. | : | |
| ----------------------------------------------------X | | |

## JOINT MOTION FOR APPROVAL
## OF FLSA SETTLEMENTS

## I.    INTRODUCTION

Plaintiffs Mathew Titus, Ronald Litton, Amanda Patrick, Franklin Key, James Knipp, Don Speakes, Wesley Lowe, Stephen Moffett, William Patrick, Joseph Siefert, William Arnold, William Stafford, Dallas Scott, and Adam Duermit, together with Defendant Tire Discounters, Inc., jointly move this Court to approve the proposed settlement of each plaintiff's wage-and-hour claims.

Each of the plaintiffs had been an opt-in to the Fair Labor Standards Act collective action *Lindsey v. Tire Discounters,* No. 2:15-cv-03065 (S.D. Ohio).  After that matter was de-certified, eighty of the *Lindsey* opt-ins—including the plaintiffs here—re-filed their individual claims in the multi-plaintiff action *Kozusko v. Tire Discounters,* No. 2:18-cv-00086 (S.D. Ohio).  The Honorable Michael Watson later found that those members of the *Kozusko* case who had not worked in the Columbus area were improperly joined; he severed and dismissed their claims, directing that they should be re-filed in an appropriate venue.  These severed plaintiffs re-filed in this Court, which is the venue where Tire Discounters is headquartered.

The parties eventually reached a global settlement on behalf of all plaintiffs (those still in Columbus and those now before this Court).  They proposed to re-certify the collective for settlement purposes and submitted papers to Judge Watson to that effect. Although Judge Watson found the settlement fair, reasonable, and appropriate in all its particulars (including the attorney's fees and expenses), he declined to re-certify the class. Instead, he directed that, so long as the individual plaintiffs who were before him signed the settlement agreement, each needed only to then file a notice of dismissal and the matters would be concluded.  As for the plaintiffs no longer before him—namely, those he had severed and who are now before this Court—he left it to the parties to seek approval from this Court.

Since then, the parties and their counsel have spent an enormous amount of time, effort, and energy re-crafting the global settlement to account for Judge Watson's orders,

the fact that a sub-set of the plaintiffs are before this Court, and the need to obtain signatures from 80 individuals on a settlement agreement. This tremendous undertaking (by counsel for both parties) has, at long last, reached its conclusion.

The re-crafted Settlement Agreement being submitted is attached as **Exhibit 1** to this joint motion. The plaintiffs before this Court have all signed it. The parties therefore ask this Court to find the settlements fair, adequate, and reasonable, including the attorney's fees and expenses—just as Judge Watson had previously done—and approve the settlements. Since each plaintiff has signed the settlement agreement (and there are no class or collective mechanisms involved), no notice or hearings are needed. Rather, the Court may simply enter an order approving the settlement and closing each captioned matter. (Dismissal entries will then be filed before Judge Watson for the plaintiffs in his court.)

## II.    A BRIEF HISTORY OF THE CASE(S)

Each of the plaintiffs was employed as a Service Manager (SM) by Tire Discounters, was classified as exempt from the overtime provisions of the Fair Labor Standards Act, and worked more than 40 hours in a workweek.

On December 12, 2015, Justin Lindsey, who had also worked as an exempt SM for Tire Discounters, filed an action in the Columbus Office of this Court, seeking to proceed on a collective action basis to recover unpaid overtime under the FLSA, alleging he and other SMs had been misclassified.

The parties to the *Lindsey* action stipulated to conditional certification of an FLSA collective, which the Columbus court approved on March 1, 2016. Along with dozens of other former SMs, the plaintiffs opted-into the *Lindsey* case, which was then extensively litigated for two years: the parties exchanged thousands of pages of documents, evidence, and ESI (and litigated extensive motion practice about disputed discovery), took depositions of many plaintiffs and the defendant's corporate representative, and briefed final certification, Rule 23 class certification (under the Ohio analogue to the FLSA), and

cross-motions for summary judgment. The Columbus court decertified the FLSA collective, denied the Rule 23 certification motion, and denied the defendant's motion for summary judgment on the exemption.

After decertification, Mr. Lindsey continued to litigate his case, while 80 of the opt-ins re-filed their claims as individuals in a multi-plaintiff action, *Kozusko v. Tire Discounters,* No. 2:18-cv-00086. Extensive litigation of the many individual claims ensued over the course of the next three years. The Columbus court then scheduled Mr. Lindsey's trial to serve as a bellwether. The pandemic scuttled the trial. And the Columbus court entered an order, *sua sponte*, that the 80 plaintiffs in *Kozusko* were misjoined. The Columbus court severed the plaintiffs, directed them to re-file individual complaints that would receive separate case numbers (and each incur a filing fee)—and that any SMs who did not work in the Columbus area should re-file their cases in an appropriate court.

The 14 plaintiffs now before this Court—all of whom had answered written discovery and some of whom had been deposed during the *Lindsey* or *Kozusko* litigation—re-filed their cases after severance here, since Tire Discounters is headquartered in Cincinnati.

## III. EXTENSIVE NEGOTIATIONS FINALLY PROPOSE A SETTLEMENT

Over the course of nearly ten years of litigation, the parties mediated the case **three different times** with prominent, well-known FLSA mediators: in 2016, with Hunter Hughes of Atlanta, Georgia; in 2018 with Bradley Sherman of Cleveland, Ohio; and in 2019, with Stephen Calardo of Cincinnati, Ohio. The mediations each ended at impasse and additional, substantial litigation continued.

Only after Mr. Lindsey's trial was back on track post-pandemic and *imminent* did the parties negotiate to an agreement-in-principle to resolve *all* plaintiffs' claims for a total sum of $1 million, including $500,000.00 in sums to the plaintiffs' and a separately negotiated $500,000.00 in fees and costs to plaintiffs' counsel. That is, they agreed on a

"global settlement" that would (a) provide each plaintiff a meaningful recovery based on his or her hours of overtime, and (b) provide Tire Discounters with a simultaneous release of every one of the claims—and therefore result in the end of all litigation and its associated costs and risks.

After extensive discussions and dozens of drafts, the parties eventually agreed to propose that the Columbus court re-certify the collective for settlement purposes so that one order could be entered approving the settlement as to all plaintiffs at once. This would have achieved both goals of the parties' global settlement approach.

Judge Watson heard the approval motion and found the settlement fair, adequate, and reasonable, including the attorney's fees provision. However, he did not believe he could re-certify a case or that he had jurisdiction to approve individual settlements of the claimants who he had severed and who had re-filed their claims in this Court. Judge Watson further required that each individual plaintiff sign the settlement agreement— and that if he or she did so, only a dismissal entry then need be filed to complete the settlement—no further hearings or approvals would be needed.

Although Judge Watson had found the settlement fair, adequate, and reasonable, his denial of the re-certification mechanism put the parties back at the drawing board. For plaintiffs' counsel, the issue was the difficulty in obtaining 80 individual signatures from people who had moved since their involvement in the case years ago. For the defendant, the issue was the risk that, if some plaintiffs refused to sign, there would not be a simultaneous (or complete) set of releases-and-dismissals to end all the litigation. And since neither party could agree to text and procedures of a revised settlement agreement until they knew whether the signatures could all be obtained, there was a major cart-and-horse problem.

Plaintiffs came up with a solution: plaintiffs' counsel would seek to obtain signed "consent forms" from each of the 80 plaintiffs—tracking them down—which would authorize the sort of revised settlement agreement the parties had in mind *if the*

*signatures could all be obtained*. This solved the cart-and-horse problem: if the plaintiffs also issued these "first signatures," then the parties could create a revised settlement agreement that included a global settlement procedure according to Judge Watson's directives, and which the parties would then have confidence each plaintiff would sign (since they had already each signed a consent).

This worked. Plaintiffs' counsel obtained signatures from nearly every plaintiff, including one who was incarcerated, and on behalf of the estates of two who had died. Taking all this into account, the parties negotiated to a final revised settlement agreement—which each of the plaintiffs who can sign, have signed. Pursuant to the agreement, all plaintiffs' claims will be dismissed.

## IV.    TERMS OF THE SETTLEMENT

The *Total Settlement Amount* for the "global settlement" is $1 million, comprised of $500,000 to fund each of the individual settlements of Mr. Lindsey and the 80 other plaintiffs, including each of the captioned plaintiffs before this Court, and a separately negotiated $500,000 to pay the attorney's fees, litigation costs, and settlement administration costs. In addition, Tire Discounters will pay the employer's share of payroll taxes separately.

After a deduction of $10,000 to provide a service award to Mr. Lindsey for bringing the case and litigating it nearly to trial (and his providing a *general* release), the funding of the individual settlements will be allocated based on a formula common to FLSA litigation of this type: each individual will receive a proportionate share of the fund based on his or her overtime hours worked—as recorded in Tire Discounters' contemporaneous time-keeping records of hours worked by each plaintiff as an exempt SM in the time period within the statute of limitations.

Each plaintiff will issue a limited release of any and all wage-and-hour claims that were or could have been brought in related to their employment as an exempt SM from

January 1, 2012, through the date of entry of this Court's order.  (The SM position was reclassified to non-exempt during the pendency of this litigation, in October 2016.)

Each plaintiff has signed the settlement agreement.

## V.    THE SETTLEMENTS SHOULD BE APPROVED

Employees may settle and waive FLSA claims by proposing a settlement to a district court to approve its fairness.  *Johnson v. Centor, Inc.,* 2021 U.S. Dist. LEXIS 213003, at *4 (N.D. Ohio Nov. 4, 2021), *citing Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1353 (11th Cir. 1982).  In approving such a settlement, the district court must "ensure that the parties are not, via settlement … negotiating around the clear FLSA requirements of compensation for … overtime."  *Id.*  Thus, the court should determine whether there was a "bona fide dispute" and "should also consider the following factors: the risk of fraud or collusion, the complexity, expense, and likely duration of the litigation, the amount of discovery completed, the likely duration of the litigation, the amount of discovery completed, the likelihood of success on the merits, and the public interest in settlement."  *Id.* At *4-5; *accord Hill v. Medicare Transp., Inc.,* 2019 U.S. Dist. LEXIS 182622, at *2 (N.D. Ohio July 22, 2019) (reciting similar factors, including "range of possible recovery, and the opinions of counsel").  And the court should find the attorney's fees "reasonable."  *Id.*

There is a "strong presumption" in favor of FLSA settlements.  *Murton v. Measurecomp, LLC,* 2009 U.S. Dist. LEXIS 144222, at *21 (N.D. Ohio Aug. 10, 2009).  "If the settlement reflects a reasonable compromise over issues actually disputed … a court may approve a settlement 'to promote the policy of encouraging settlement of litigation.'  Settlement is the preferred means of resolving litigation."  *Id.*

### A.    Fair & Reasonable Resolution of a Bona Fide Dispute

Misclassification claims by intermediate-level managers, like the SMs here, are classic FLSA disputes.  *See Hill,* 2019 U.S. Dist. LEXIS 182622, at *2-3 ("The parties divergent views of the facts would have required judicial resolution had the parties not

been able to compromise their differences."); *accord Batista,* 2019 U.S. Dist. LEXIS 121658, at *2-3.

The global recovery is approximately 60% of the unpaid overtime wages during the underline{three-year} statute of limitations period.  This is a substantial recovery in any case, and especially here where, to obtain such a recovery after the decertification order, each plaintiff would have to take his or her individual case to trial; the likelihood that each and every plaintiff would prevail—*i.e.,* that 80 different juries would find for the employee— was far from certain.  Indeed, Tire Discounters did and would continue to vigorously litigate its exemption and other defenses on the merits and damages, including the nature of SMs duties and the number of hours actually worked—as well as whether the third year of the limitations period would be appropriate on the evidence in each of the *individual* cases.  Thus, there was a bona fide dispute with respect to the validity and strength of each plaintiff's claims.  *Cf. Hill,* 2019 U.S. Dist. LEXIS 182622, at *2-3.

### B.    All Factors Favor Settlement Approval

*First,* given the vigor with which each side litigated the case, the expertise and experience of counsel, and the three separate mediations with different mediators over the course of almost a decade of hard-fought litigation, there is zero risk of fraud or collusion between the parties of their counsel.  *See In re Inter-Op Hip Prosthesis Liab. Litig.,* 204 F.R.D. 330, 351 (N.D. Ohio 2001).

*Second,* these FLSA misclassification cases—which involve a host of evidentiary factors regarding "management"—as well as difficult jury questions regarding bad faith, willfulness, and the legal question regarding the method for calculating damages, render these matters very complex.  *See Barnes v. Winking Lizard, Inc.,* 2019 U.S. Dist. LEXIS 65657, at *7 (N.D. Ohio March 26, 2019).  And proceeding with 80 individuals cases— with several depositions in each—the filing and deposition fees alone render it very expensive.  And the litigation has been fought for nearly a decade and all the way up to the first handful of trials ready to be scheduled.

*Third,* discovery was complete: extensive collective-wide discovery occurred under the *Lindsey* auspices and dozens of people were deposed, thousands of documents were exchanged, and the case had been fully briefed on a fulsome record.

*Fourth,* the litigation is approaching the 10-year mark, and—absent these settlements—would likely have continued for years: it would take a massive amount of judicial resources (and those of both sides' counsel) to try the 80 individual cases to jury verdict. And each or every one of those could be appealed, remanded, and potentially re-tried. Another five years of litigation would be a reasonable estimate.

*Fifth,* a misclassification case presents a classic question on which jurors may reach different conclusions when each party presents evidence on either side of the "management" issue. Thus, there is virtually always a risk that jurors may find the employee managed 'enough' to meet the exemption, which results in a total defense verdict and no recovery for the employee. This settlement properly manages that risk and returns a significant amount in unpaid overtime recovery for *all* plaintiffs who would otherwise have to present their individual cases to juries. *See, e.g., Weisgarber v. North American Dental Group, LLC,* S.D. Ohio No. 18-Civ-2860 (ECF 156) (March 1, 2022).

 *Sixth,* the law strongly favors settlements, especially in FLSA cases. *Murton,* 2009 U.S. Dist. LEXIS 14422, at *21.

*Seventh,* an FLSA settlement may be approved as fair even where plaintiffs receive in settlement substantially less than the amount they originally claimed. *Kirby v. J&M Roofing, LLC*, 2020 U.S. Dist. LEXIS 83929, at *4 (N.D. Oh. May 13, 2020). Discovery–including the production of records–as well as the risks associated with litigation and the viability of certain defenses, all may cause a plaintiff to settle for substantially less than the original amount claimed. *Id.* In addition, disputes over liquidated damages, the applicable statute of limitations, and/or the method for calculating the overtime owed (time-and-a-half versus the fluctuating work week method, 29 U.S.C. §778.114) can cause an FLSA plaintiff to accept substantially less in settlement than originally claimed. *See*

*Lopez v. Silfex, Inc.*, 2021 U.S. Dist. LEXIS 232508, at *12 (S.D. Oh. Dec. 3, 2021) (dispute as to statute of limitations and liquidated damages); *Dewald v. Time Warner Cable Inc.*, 2021 U.S. Dist. LEXIS 32459, at *8-9 (S.D. Feb. 16, 2021) (same); *Kline v. Hobby Lobby Stores, Inc.*, 2011 U.S. Dist. LEXIS 72915, at *3 (E.D. Ky. July 7, 2011) (dispute as to method for calculating damages). In this instance, the recovery of about 60% of the unpaid three-years overtime pay represents a substantial portion of the possible damages were each of the cases tried.

*Finally,* it is the opinion of plaintiffs' counsel—all experienced FLSA litigators— that this is an *excellent* settlement in all its particulars: it is a substantial recovery, it avoids significant risks and expenses, and it is fair to each plaintiff by way of allocation and approval.

## VI.   THE SERVICE AWARD IS FAIR

Plaintiffs believe that, given the time and effort expended by Mr. Lindsey, a Service Award is warranted in this action, as has been held by numerous courts in Ohio. *Kis*, 2020 U.S. Dist. LEXIS 93929, at *13-14 (approving service award to named plaintiff in the amount of $7,000 and other plaintiffs $1,000 each); *Barnes v. Winking Lizard, Inc.*, 2019 U.S. Dist. LEXIS 65657, at *18 (N.D. Oh. Mar. 26, 2019) (approving $7,500 service award to named plaintiff and $1,000 to other plaintiffs); *Osman v. Grube, Inc.*, 2018 U.S. Dist. LEXIS 78222, at *5-6 (N.D. Oh. May 4, 2018) (approving $7,500 service award to named plaintiff); *Carr*, 2018 U.S. Dist. LEXIS 228221, at *7 (approving $5,000 service award to named plaintiff); *Murton*, 2009 U.S. Dist. LEXIS 144222, at *29 (approving $10,000 service award to named plaintiff).

## VII.   THE ATTORNEYS' FEES & COSTS ARE REASONABLE

In the context of the FLSA, the Sixth Circuit has held that an award of attorney' fees must be reasonable, meaning it must be "one that is adequate to attract competent counsel . . ." *Hill*, 2019 U.S. Dist. LEXIS 182622, at *3 (citing *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999)). Here, the parties have agreed that plaintiffs' counsel will

receive $500,000.00 as attorneys' fees, litigation costs, and settlement administration costs. The attorneys' fees, costs, and expenses were negotiated separately from the back wages for the plaintiffs. Thus, the Court's approval of attorneys' fees, costs, and expenses will not reduce, diminish or otherwise compromise the back wages and other payments to the plaintiffs. Rather, the attorneys' fees, costs, and expenses are above and beyond the amount to be paid to Plaintiffs, such that their recoveries are not reduced due to the fees and costs incurred on their behalf.

Plaintiffs assert that of the total award sought of $500,000.00, $52,039.95 represents actual costs and expenses incurred by plaintiff's counsel, including: court fees; service of process; deposition transcript; postage/express mail costs; travel costs (associated with mediation, depositions, and hearings); lodging and meals (associated with mediation, depositions, and hearings); mediation costs, and administration expenses (conditional certification notice administration). In addition, $3,500.00 represents actual costs and expenses to be incurred by Plaintiffs' counsel to be paid to the Settlement Administrator for distributing checks; determining and remitting tax withholdings; communicating with counsel for the parties; and performing other activities and services associated with the administration of the settlement. This amount is the estimate proposed by CAC Services Group, LLC in connection with their bid to be retained as Settlement Administrator.

The balance of $447,960.05 represents an award of attorneys' fees for the work performed by Plaintiffs' counsel. Plaintiff's counsel attests that the total lodestar to date for the work performed by all of Plaintiffs' attorneys is $ 1,823,770.76. Plaintiffs' counsel represents that this reflects the time actually spent, in the exercise of reasonable judgment by Plaintiffs' lawyers and staff involved and is reflected in the detailed time records for each of the firms. Plaintiffs' counsel asserts that the work undertaken represents the work addressed above in connection with the investigation and filing of the lawsuit, the work undertaken in conjunction with the discovery and litigation of the case, and the work

involved in negotiating and effectuating the Settlement. Each of the attorneys involved in the case had expertise and knowledge with respect to aspects of the litigation, including extensive and successful records in class action and wage hour litigation. Plaintiffs' counsel attests that Plaintiffs' attorneys also communicated regularly to ensure that there was no unnecessary time incurred, nor duplication of effort.

Plaintiffs' counsel's asserts that its request for payment of fees in the amount of $447,960.05 (in addition to costs actually expended) represents a *negative* multiplier of .25. Given the risks presented by litigation and the results obtained, this multiplier is decidedly reasonable. Based on Plaintiffs' counsel's experience, it is expected that there will be significant time spent by Plaintiffs' counsel in the future administering the claims process and this settlement, resolving issues with the Settlement Administrator and Defendant's counsel, and speaking with Plaintiffs about the administration and the Settlement, bringing the multiplier even further below one. Defendant does not oppose the amount to be allocated as attorneys' fees and costs as set forth in the Parties' Agreement.

The settlement of attorneys' fees, costs, and administration expenses was independent and agreed upon separately from the amounts calculated to be paid to Plaintiffs. Because Defendant has agreed as part of the settlement to pay the Plaintiffs' attorneys' fees which were negotiated separately and will not diminish the amount to be paid in wages, the Court need not conduct an in-depth analysis as to the reasonableness of the fees, unless the fee amount appears unreasonable on its face. *See, e.g., Barr v. Cleveland Metroparks*, 2018 U.S. Dist. LEXIS 17597, at *5 (N.D. Oh. Feb. 2, 2018) (approving fees without a comprehensive analysis where parties separately agreed to attorneys' fees); *Brittmon v. Upreach LLC,* 2018 U.S. Dist. LEXIS 224730, at *4-5 (S.D. Oh. Nov. 8, 2018); *Padilla v. Pelayo*, 2015 U.S. Dist. LEXIS 101801, at *6 (S.D. Oh. Aug. 4, 2015). A court will approve an award of attorneys' fees pursuant to an FLSA settlement – even where the fee request is significant where, as here, "the attorney's fees are separate

from Plaintiffs' award in this matter." *Hatfield-Evans v. ENNRL, Inc.*, 2018 U.S. Dist. LEXIS 196896, at \*8 (E.D. Tenn. Oct. 30, 2018), *report and recommendation adopted*, 2018 U.S. Dist. LEXIS 196401 (E.D. Tenn. Nov. 19, 2018)); *see also Ridenour v. Serv. Pros Installation Grp., Inc.*, 2020 U.S. Dist. LEXIS 19142, at \*8-9 (E.D. Tenn. Jan. 17, 2020).

While the attorneys' fees, costs, and administration expenses sought here are equal to the total amount of wages to be paid to Plaintiffs, that does not preclude the full award of fees, costs and expenses negotiated and agreed to by the Parties:

> many wage and hour cases involve relatively small claims and therefore small amounts of damages suffered by the workers in question. In such a circumstance, counsel for the worker is often required to expend substantial attorney time—sometimes accruing fees many times greater than the value of the damages in the case—in order to help the worker recover his or her wages. It is necessary for the proper functioning of the FLSA and associated state laws that lawyers who undertake these cases be compensated for these efforts. "The very reason that the FLSA (and the civil-rights acts) mandate an award of reasonable fees to prevailing plaintiffs is that the monetary value of their claims is often too small to support the cost of litigating them."

*Estate of McConnell v. EUBA Corp.*, 2021 U.S. Dist. LEXIS 92836, at \*15-16 (S.D. Oh. May 17, 2021). Indeed, as one Ohio court noted:

> Although the attorneys' fees exceed Plaintiff's award, this is neither uncommon nor unreasonable. *See Fegley v. Higgins*, 19 F.3d 1126, 1134-35 (6th Cir. 1994) (noting that awarding attorneys' fees encourages FLSA enforcement and "ensure[s] effective access to the judicial process," and upholding an award of $40,000 in attorneys' fees when plaintiff recovered nominal damages); *see also, e.g., Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 358 (5th Cir. 1990) (affirming award of $9,250 in attorney's fees when plaintiff recovered $1,698.00); *Heder v. City of Two Rivers*, 255 F. Supp. 2d 947, 962 (E.D. Wisc. 2003) (awarding $36,204.88 in attorney's fees, but $3,540.00 in plaintiff's damages).

*Batista v. Tremont Enters.*, 2019 U.S. Dist. LEXIS 121658, at \*4 (N.D. Oh. July 22, 2019); *see also Weisgarber v. North American Dental Group, LLC, et al.* No. 18 Civ. 2860, ECF No 156 (S.D. Ohio March 1, 2022) (approving settlement consisting of $175,871.67 to collective members, and $457,266.34 as separately negotiated fees and costs); *Jones v.*

*Home Care Assistance of Cent. Ohio, LLC*, 2019 U.S. Dist. LEXIS 213145, at *4 (S.D. Oh. Dec. 9, 2019) ("While it is true that Ms. Jones' attorneys receive more from this settlement Agreement than she does, '[f]or an employee with minimal claims to obtain the services of an attorney, that attorney must be able to recover a reasonable fee. Indeed, the possibility of an attorney's fee that eclipses any pay award should add to the incentive for an employer to make a quick and just resolution of even the most minor overtime claims.'").[1]

## VIII. CONCLUSION

The Settlement is reasonable and fair in all respects, particularly considering that at all times this litigation was vigorously contested. Moreover, this global settlement was already scrutinized, modified, and approved by Judge Watson as to the overall settlement, the fees and expenses, and the recoveries and releases of the plaintiffs who were before him in Columbus. Therefore, this Court should issue an order approving each of the individual settlements of the plaintiffs before it and direct that dismissal entries then be filed within 14 days of such order, thus terminating this litigation.

---

[1]     *See also Slaughter v. Sykes Enters. Inc.*, No. 17 Civ. 2038, 2019 WL 529512, at *8-9 (D. Colo. Feb. 11, 2019) (approving an FLSA collective settlement for a collective of call center workers that included $500,000 to the collective members and $650,000 in attorneys' fees and costs); *Halleen v. Belk, Inc.*, No. 16 Civ. 55, 2018 WL 6701278, at * 7 (E.D. Tex. Dec. 20, 2018) (approving an FLSA collective settlement for a collective of retail managers in which the amount to attorneys' fees and costs was separately negotiated from the amount to the collective); *Berrios v. Nicholas Zito Racing Stable, Inc.*, No. 04 Civ. 22, 2014 WL 12838562, at *7 (E.D.N.Y. Jan. 28, 2014) (approving an FLSA and Rule 23 settlement and considering "the fact that the attorneys' fee award was negotiated separately from the Settlement award for class members" when granting fees and costs); *Gay v. Tri-Wire Eng'g Sols., Inc.*, No. 12 Civ. 2231, 2014 WL 28640, at *12 (E.D.N.Y. Jan. 2, 2014) ("the fact that the attorney's fee award was negotiated separately from the settlement award for class members" along with other factors such as the firms' lodestars, "together prompt the court to find that the requested amount of attorney's fees is fair and reasonable").

Respectfully submitted this 2 day of August 2024.

| | |
|---|---|
| **_/s/ Drew Legando_** | **_/s/ Jason W. Hilliard_** |
| Drew Legando (0084209) | Jason W. Hilliard |
| MERRIMAN LEGANDO & WILLIAMS, LLC | Colleen P. Lewis |
| 1360 West 9th Street, Suite 200 | DINSMORE & SHOHL LLP |
| Cleveland, Ohio 44113 | 255 E. Fifth Street, Suite 1900 |
| T. (216) 522-9000 | Cincinnati, OH  45202 |
| F. (216) 522-9007 | Phone: (513) 977-8200 |
| E. drew@merrimanlegal.com | Fax:  (513) 977-8141 |
| | colleen.lewis@dinsmore.com |
| | jason.hilliard@dinsmore.com |
| **_Counsel for Plaintiffs_** | **_Counsel for Defendant_** |